Case number 14-5309, American Institute of Certified Public Accountants Appellant v. Internal Revenue Service and John A. Kosakang in his official capacity as Commissioner of Internal Revenue Service. Mr. Cox for the appellant, Ms. Hauser for the appellate. Ms. Hauser for the appellate. Good morning, and may it please the Court. My name is Douglas Cox. With me today, Jacob Spencer. We represent the American Institute of Certified Public Accountants, the AICPA. The appellant's here today. I've asked to reserve three minutes of my time. This appeal presents one issue, whether the AICPA has standing to challenge the IRS's latest effort to regulate tax return preparers. To rule for the IRS, the Court would need to conclude that no member of the AICPA has standing to sue in his or her own right. The AICPA has standing on three distinct grounds. I will start, if I may, with the ground of competitive standing, because the Court asked us to take a look at the State National Bank of Big Spring v. was that it would suffer competitively because another bank had been designated as too big to fail. The Court rejected that argument on the ground, first, that at the time the complaint was filed, the too big to fail designation had not occurred. We have nothing like that here. Second, the Court said, look, the regulation at issue merely, that is to say, only, imposes new burdens on the purported competitor, and thus the link to competitive farm was too attenuated. This case is entirely different. Whereas the too big to fail designation had nothing to do with competition, here the IRS set out to change the competitive playing field for tax preparers by providing a new government-issued credential and inclusion in a federal directory of tax preparers. Here's what the IRS said. The rule permits unenrolled preparers to stand out from the competition by giving them a record they can show their clients. They said the benefits of complying include that the rule differentiates you in the marketplace. The rule also benefits our competitors and increases competition because it expands the scope of services that unenrolled tax preparers can provide, opening up a new field of competition. The AICPA took the IRS at its word that the new rule would work as intended and change the competitive playing field confronting the AICPA's members. That's more than enough for standing under this Court's decisions. Surely, says aides to plaintiffs' competitors, U.S. Telecom repeatedly held that parties suffer constitutional injury in fact when agencies allow increased competition. More than enough here, and Big Spring does not change the law of the circuit, and that ground of standing alone resolves the appeal. As I said at the outset, we have three grounds of standing. Let me turn to the second ground, that the rule imposes new costs on AICPA members. Now, the Court will know from the papers that... You mean because of the increased supervisory responsibilities? Not just the increased supervisory responsibilities, Your Honor. That's part of it. But, you know, we believe that the Court has to take our non-frivolous interpretation of the reg into account. What's the difference between frivolous and wrong? Well, Your Honor, I think frivolous means it has no support, and wrong means it's debatable. And we think we are clearly right. We're right on the text. We have... So is it sort of like Chevron? I mean, if we look at... No, Your Honor, I don't think it's like Chevron. I don't think it's a question of deference. No, that wasn't my question. My question was, I said, is it like Chevron? By that I mean, if we look at 10.36a, and if we think it's clear, then your contrary interpretation would be frivolous. If we think it's ambiguous, then it wouldn't be frivolous. Suppose we think it's a clear regulation. Can you still prevail? Yes. I mean, for starters, Your Honor, I don't need to win on that issue to win any ground of standing. But you said you wanted to talk about this ground of standing. Right. It's a separate ground of standing. Yeah. But even on this one ground, Your Honor, let us assume we don't need to get into this fight. Let's assume... You mean because of your argument about competitor standing? No, not my competitor standing. Again, just focusing on the increased cost, the increased administrative cost. We'll take, for purposes of argument, the IRS's own interpretation of the regs. And what they say is that as a result of this rule, unenrolled tax preparers will move from not being regulated by the IRS to being regulated by the IRS. So that they are expanding the zone of their regulatory authority. Our members employ unenrolled tax return preparers. And so they now have a group of employees that the IRS admits right now, without this rule, they wouldn't be regulating. And now they are regulating. Isn't the difference, isn't the IRS's point that prior to this new program, CPA firms, true, the unenrolled preparers were not themselves subject to 230, but CPA firms were responsible for their behavior. In other words, if they misbehaved, the CPA firms could be disciplined. Whereas now, under the new program, the unenrolled tax preparers can themselves subject themselves directly to 230. Isn't that the IRS's argument? That's right, Your Honor. Okay, well, if they're right about that, then why does this increase any supervisory costs on your members? Well, Your Honor, as I say... Because under the IRS's rule, the members are still responsible for their behavior. The only difference is that under the new rule, the unenrolled tax preparers are themselves subject to 230. Yes, Your Honor, and I submit that that is a significant increase in regulatory burden. Okay, explain that. Why? Well, I think, Your Honor, that there is a difference between saying, I am a principal of the firm, and I am responsible for making sure people comply with the rule. I'm just giving their reading of the rule. That's different from saying, the IRS can reach out directly to my employees and sanction them. No, no, no. No, as I understand, I can ask them this, but I understood their position to be, the Commissioner's position to be, that prior to this program, it could not sanction an unenrolled tax preparer. That's right, Your Honor. Now, it can if that unenrolled tax preparer voluntarily participates in the program. That's right, Your Honor. So then, take, for example, suppose one of your members has two unenrolled tax preparers now, and one's in the program and one isn't. Isn't the company, isn't the members that is a CPA firm's supervisory responsibility for both of them the same, even though the unenrolled preparer who now participates in the program could herself be sanctioned? Well, Your Honor, you may be putting more content than I understand in the word supervisory responsibility. Well, that's what I was asking you. Is it different? Well, the court has recognized that if we incur an increase in compliance costs, that that's enough for standing in AFSCU. In the Chamber of Commerce versus Department. But where does the increase come from? Your Honor, I think the increase comes at a minimum. Just as you described the IRS's view of the world, there is a difference for an employer between saying, I'm responsible for my employees, I could be the target of sanctions, and a world in which I'm responsible for my employees, I can be the target of sanctions, and my employee can also be the target of sanctions. It changes my thinking about who I can put on the competitive playing field. If nothing else, Your Honor, the IRS, under this rule, can reach out and sanction my employees, and they admit that that's new. And the notion I wouldn't have new compliance costs as a result of that seems to me unlikely. Yeah. All right. Okay. And again, Your Honor, I think when you look, for example, in the Chamber of Commerce versus Department of Labor, the court says we're going to look to the practical effect and the lost time for employees disrupted in their work. In the Lower Oak decision, we say we're going to look to the time, personnel, and energy that are devoted to having to comply with the rule. Because I think the fact of the matter that we're going to have to change the way we do business because the regulatory regime is changing is enough separately from competitive standing to support standing here. And, Your Honor, as I said, this is an argument that we may, and I think prevail on, even in the face of the IRS's insistence their reading of the reg must be accepted. Our argument about how on a 12B1 motion our reading of Circular 230 has to be accepted is separate from this. And as I said, Your Honor, we think we have on our side. Do you have in the record an affidavit that explains why, in what way, the burden would be increased? I know you assert that it would, and I understand it, but where would I look in the record to find out why? Your Honor, we do have declarations from people who are our members or employees of our members in which they set out the fact that they believe that this is going to impose. Right, but I'm asking you the question, the specific question I'm asking you. Does it explain why the burden would be greater for unenrolled tax preparers who choose to participate in the program and unenrolled tax preparers who choose not to? Well, Your Honor, it focuses on what unenrolled tax preparers will do in the face of the rules. It's really focusing on what they will do to comply with the rule. All right. Okay. All right. Thank you, Your Honor. Okay. Go ahead. We'll hear from the Commissioner. Good morning, Your Honors. My name is Bethany Houser for the Appellees, the IRS mostly here. This is, as Mr. Cox said, an appeal about constitutional standing. And the main issue here is whether this program, the IRS's voluntary annual filing season program that is not mandatory for anyone and is not aimed at CPAs, has caused harm or threatens to cause harm to CPAs, members of the AICPA, so as to create Article III standing for the CPA to bring this suit, challenging the voluntary annual filing season program. Why is it not obviously competitive standing? Because... The IRS itself describes the program that way, to increase competition. The IRS... And they certainly will. Perhaps the easiest way to explain this is to say I would have a different answer if this case were being brought, if the appellant in this case were not a CPA, if they were a paid tax return preparer with no credential. Why? Because... Does that have to do with their claim that competition for them will be increased? Right. I'm not asking you about whether someone else might have a claim. Why don't they? Nothing about this program increases the number of people who can be paid tax return preparers. Right now... But you see that their argument is that, just to follow up on Judge Edwards' question, their argument is that unenrolled tax preparers who participate in the program will have two credentials, which will allow them to compete more effectively with CPAs. In other words, they'll have a certificate of completion and they'll be listed in the directory. And that they will be able to compete more effectively because, presumably, they charge less, but now they look more qualified. And that's their argument. So I don't understand why you make this distinction between... But I don't see why the CPA firm couldn't either, couldn't also. Because there's no reason to think that a record of completion, and the IRS is very careful not to call it the certificate of completion. Well, whatever. You're right about that. That's a good point. That a record of completion or participation in the annual filing season program gives anyone a competitive advantage against a CPA. Well, the IRS will. Or against an employee of a CPA. Well, but they have allegations that it will. And at this stage of the proceedings, we have to accept those allegations as true, unless, you know, they're completely unsupported. And they have lots of affidavits that say this. They say it in their complaint and they say it in their affidavits. Well, we have a program that we say is voluntary. Right, but this is standing. The IRS is saying they're giving them enhanced status. Enhanced status vis-a-vis people who have no qualifications whatsoever. Right. That's the whole point. They now have qualifications. They now have qualifications. That's exactly right. And we'll be in a better position to compete against those who are challenging you. I don't know what the answer on the merits will be, but that's not the point. I don't know how they can't possibly have Article III standing. And when we get to the point where the standing doctrine becomes ludicrous, you're establishing a program intending to enhance the status of these people who are doing work that is like, at least in some respects, like the work being done by the petitioners. The petitioner says they're going to be given additional status because of a government program. Those who accept it. And certainly some of them will. And we want to challenge that. It's increased in competition. What's your answer to that? My answer to that is that it's this program does nothing to increase the status of unenrolled tax return preparers. Well, just take the directory. They're now listed in a directory. Yes. Doesn't it just make sort of common sense that if someone is looking for someone to do their tax returns, they're going to look in this directory, and they're going to find a name, and they'll think that, first of all, they'll find the name. That's number one. Number two, they're listed in an IRS directory, so they'll think this person's better qualified than people who aren't. And they have this, what did you call it? Not certificate. Record of completion. And doesn't it just sort of make common sense that put yourself in a position of someone looking for someone to do your tax return? Well, all the CPAs are in this directory as well. I mean, I pay quite a bit of money right now for a CPA to do my tax returns. I could save a lot of money by hiring one of these people. And, frankly, I wouldn't do it if they weren't listed in this book and in the directory and if they didn't have this record. And that's what their allegations say in the complaint, and that's what the affidavit said. It just makes common sense. Because they're in a state that's maybe so great they may charge more and have no advantage. Right. Let me ask you this. That's not a question. Since we're going around in circles on it, or at least you're not. Did the commissioner not file a 28-J letter on Big Springs because you didn't think it helped you? No, that is not why. Okay. Well, do you want to talk about Big Springs? Yes. I do think that Big Springs helps us because in this court, in that case, this court found that the conveyance of a reputational benefit on a competitor was insufficient under the precedence to create competitor standing. This court describes competitor standing as involving the allegedly illegal under-regulation of a plaintiff's competitor, which is not what we have here. We already have unregulated competitors. All right. You have increased regulation of a competitor. And we have case law that says that that's the case. But what about Big Springs? Well, let me try this. I want to suggest to you the two ways I think Big Springs is different. And you tell me why you think they're wrong. Okay? So one is that in Big Springs, in this case, the unenrolled preparers voluntarily participate in the program. They're not going to participate in the program if they don't think it gives them competitive advantage. In other words, they're not going to spend the money to become members to participate if it doesn't. Whereas in Big Springs, the banks had no choice. The banks were designated by the government as too big to fail. And we've said in our case law that, you know, allegations founded on basic laws of economics can support standing. So that's one difference. In other words, by their very act of spending money to participate, they're revealing, demonstrating the competitive advantage they think they'll get. That's one distinction. What do you think about that? I agree that there's a distinction in that GE has no choice about whether to be regulated, whereas individuals do have a choice about participating in this program. I don't think that the choice to participate in this program indicates that they believe they'll get a competitive advantage. Why would they spend the money? Because the vast majority, the majority of people who are paid tax return preparers are not CPAs. And so you can... But if we accept the allegations in the complaint and the affidavits as true, would you agree we must at this stage, right? Yes. Okay. Their allegation is that the CPA firms will be at not a competitive disadvantage, but that the unenrolled preparers who participate will be, will get a competitive benefit from it. That's what they say. And we have to accept that as true. But that's the same thing that the State National Bank of Big Spring said in their case. Well, but that's why I was asking you whether or not it makes a difference that here the unenrolled tax preparers are voluntarily spending money to participate in the program, whereas the banks were designated by the government. So there's less reason to think in that case that the link has been established. I see what you're saying. In the State National Bank of Big Spring case, there was a second step in the procedure that there had been no showing of any connection between any alleged reputational benefit to GE from being regulated and any harm to the State National Bank. And I think that that is here as well. Even if we accept the allegation of a reputational benefit to the participants in the annual filing season program, the connection between that and any harm to the CPAs is too tenuous, too attenuated and speculative. So in Big Spring, here's my second. Let me ask you about my second reason for wondering whether this is a different case. In Big Spring, we said the link between, one, the enhanced regulation of the competitor, to any alleged reputational benefit to competitor. That link between one and two hadn't been established, whereas here, that is the link. In other words, the enhanced regulation of the competitor is the benefit. So there's nothing to link up in this case. What do you think about that? I mean, that may be right, it may be wrong. I'm trying to figure out the extent to which this case controls a decision here. And I'm wondering whether you think there's something wrong with these two bases I've given for distinguishing Big Springs. No, but I think that they... Well, certainly the fact that GE... I'm certainly not going to dispute the fact that GE can't choose whether to be regulated, whereas the participants in the annual filing season program are electing to participate in that program. That's certainly one basis for distinguishing. I see that my time has expired. Yeah. Thank you. Any questions? No. Okay, thank you. Mr. Cox, we... No questions. Did we use up all your time? No, Your Honor. Do you have any time? I do have some time left, but I will be very quick here. Do you want it? Just very quickly. No, you don't. Wait, wait, wait. Does he have... What? He used all his time. You used all your time. You can have one minute. All right. Yeah, if you want it. Your Honor, just to touch quickly again on Big Spring. Big Spring itself cites surely what says the basic requirement of all of our cases is the complaint show an actual imminent increase in competition, which we recognize will almost certainly cause injury in fact. Then, Your Honor, you asked the question about where you could look in the record for evidence of cost. There are several declarations on this, but if you look at JA94 to 96, some of the costs are discussed there. Okay. Thank you, Your Honor. Thank you. Case is submitted. Stand at ease.
judges: Tatel, Edwards, Ginsburg